IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**JANE DOE, a known person proceeding
under pseudonym,**

    **Plaintiff,**

v.                                                                                                                               **Civil Action No.  5:25-cv-00759**

**SAMUEL D. PARSONS, in his individual
capacity, acting under color of state law as
a Fayette County Magistrate, MX.DOE(S),
individuals sued in their individual
capacity, whose identity is presently
unknown, gender neutral,**

    **Defendants,**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
PARSONS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

       Defendant Samuel D. Parsons, by counsel, Charles R. Bailey, Andrew R. Herrick, and the law firm of Bailey & Wyant, PLLC, offers the following Memorandum of Law for the Court's consideration in support of its contemporaneously filed Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff's allegations challenge nothing more than a magistrate judge's discretionary handling of a domestic violence petition, which is not actionable under § 1983. In support thereof, Defendant offers this Court the following:

**I.  INTRODUCTION**

       Plaintiff's Complaint attempts to constitutionalize a magistrate judge's handling of a domestic violence protective order petition by recharacterizing core adjudicative acts as "executive," "investigative," or conspiratorial conduct. Despite its length, the Complaint alleges nothing more than dissatisfaction with judicial decision-making and procedural rulings made in the course of a judicial proceeding.

1

Even accepting all well-pleaded factual allegations as true, Plaintiff fails to state any plausible claim for relief. Defendant Parsons is entitled to absolute judicial immunity for the acts alleged, which were judicial in nature and taken within the scope of his authority. Independently, the Complaint fails to plead any violation of the First or Fourteenth Amendments, including access to courts, equal protection, or substantive due process. For these reasons, and as set forth below, the Complaint must be dismissed in its entirety pursuant to Rule 12(b)(6).

## II.    FACTUAL ALLEGATIONS

According to the Complaint, Plaintiff Jane Doe is a resident of Raleigh County, West Virginia, who proceeds under a pseudonym due to the sensitive nature of the allegations. Plaintiff's Complaint, ¶¶ 4–5. Plaintiff alleges that she sought relief under West Virginia's domestic violence protection statutes following alleged misconduct by an elected prosecuting attorney in Raleigh County. *Id.* at ¶¶ 23, 37–39, 59. Defendant Samuel D. Parsons was, at all relevant times, a Magistrate Judge in Fayette County, West Virginia, and is sued in his individual capacity. *Id.* at ¶¶ 6, 9. The Complaint also names multiple unidentified "Mx. Doe Defendants," alleged to be state actors who purportedly conspired with Defendant Parsons. *Id.* at ¶¶ 7–8, 35–46.

Plaintiff alleges that on July 26, 2024, she attempted to file a verified petition seeking entry of a domestic violence protective order pursuant to Article 27 of Chapter 48 of the West Virginia Code. *Id.* at ¶¶ 59–60. According to the Complaint, the petition was submitted in the Raleigh County Magistrate Court, and the alleged domestic violence conduct underlying the petition occurred in Raleigh County, where both Plaintiff and the named respondent resided. *Id.* at ¶¶ 59–61. Plaintiff contends that venue for the petition was proper in Raleigh County. (¶¶ 61–62). Plaintiff alleges that the Raleigh County Magistrate Court did not proceed with an emergency hearing under W. Va. Code § 48-27-3. *Id.* at ¶ 60. Instead, Plaintiff asserts that she was informed, through actions attributed to

2

Raleigh County Magistrate Peck, that she would be required to travel to Fayette County and submit her petition there. *Id.*

Plaintiff next alleges that she traveled to Fayette County and presented her petition to Defendant Parson. *Id.* at ¶ 63. Plaintiff contends that rather than limiting his role to adjudicating the petition based on evidence presented in court, Defendant Parsons engaged in conduct Plaintiff characterizes as investigative in nature. *Id.* at ¶¶ 19–20, 32. Specifically, Plaintiff alleges that Defendant Parsons left the courtroom for extended periods, made numerous telephone calls, and personally contacted third parties regarding the allegations contained in her petition. *Id.* at ¶¶ 19, 32, 63–64. Plaintiff alleges that these communications included contacting potential witnesses, law enforcement officers, prosecutors, and other individuals, some of whom Plaintiff believes were politically connected or affiliated with the respondent to the domestic violence petition. *Id.* at ¶¶ 19, 23–24, 32, 38–39.

Plaintiff further alleges that Defendant Parsons required her to provide the names and telephone numbers of individuals with whom she had previously communicated, including law enforcement officials and federal authorities, and that this information had previously been shared in confidence. *Id.* at ¶¶ 28, 48–50. Plaintiff asserts that Defendant Parsons' conduct resembled that of a detective or investigator rather than a judicial officer. *Id.* at ¶¶ 20, 32, 66–68.

According to the Complaint, after more than an hour of alleged investigative activity, Defendant Parsons returned and denied Plaintiff's petition for a domestic violence protective order. *Id.* at ¶¶ 64–65. Plaintiff contends that the denial was predetermined, arbitrary, and motivated by improper considerations, including the identity and political status of the respondent. *Id.* at ¶¶ 23–24, 31, 65. Plaintiff alleges that similarly situated domestic violence petitioners are not subjected to such investigative scrutiny and that Defendant Parsons intentionally treated her differently from other petitioners without a rational basis. *Id.* at ¶¶ 16–18, 21–22, 65.

Plaintiff further alleges that Defendant Parsons lacked authority to act as an investigator, that his actions exceeded the scope of judicial authority, and that his conduct violated the separation of powers by intruding into executive functions. *Id.* at ¶¶ 20, 25, 32, 66–68. Plaintiff asserts that Defendant Parsons' actions violated provisions of the West Virginia Code of Judicial Conduct that prohibit judges from independently investigating facts or considering evidence outside the judicial record. *Id.* at ¶¶ 67–68.

Plaintiff alleges—largely upon information and belief—that Defendant Parsons conspired with unidentified "Mx. Doe Defendants," including individuals associated with the prosecuting attorney's office, courthouse staff, or other governmental entities. *Id.* at ¶¶ 35–46, 68–71. She alleges that these individuals communicated with Defendant Parsons before and during the handling of her petition. *Id.* at ¶¶ 24, 37–43, 68–71. Plaintiff alleges—again upon information and belief—that these communications included telephone calls, emails, text messages, and facsimiles among Defendant Parsons, court personnel, and others. *Id.* at ¶¶ 45, 68–69. The Complaint alleges that these purported communications were intended to deprive Plaintiff of equal protection, due process, access to courts, and protection from domestic violence. Id. at ¶¶ 40–43, 70–71.

As a result, Plaintiff alleges that Defendant Parsons violated Plaintiff's Fourteenth Amendment's equal protection clause under 42 U.S.C. §1983 and Article III, Section 10 of the West Virginia Constitution, violated Plaintiff's First and Fourteenth Amendment rights of guaranteed access to the courts under 42 U.S.C. § 1983 and Article III, Section 17 of the West Virginia Constitution, engaged in conspiracy under 42 U.S.C. §1983 and Article III, Sections 6, 10, and 17 of the West Virginia Constitution, violated Plaintiff's Fourteenth Amendment's substantive due process rights under 42 U.S.C. §1983 and Article III, Section 10 of the West Virginia Constitution. *Id.* at Counts I-IV. Plaintiff also alleges a state tort claim of intentional infliction of emotion distress against Defendant Parsons. *Id.* at Count VI.

### III.     LEGAL STANDARD

"In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (1993) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)). Nonetheless, the Fourth Circuit has noted, "[t]he court need not, however, accept unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "The inclusion of conclusory legal terms, however, does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion, 'since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.'" *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir.1994); *Trulock v. Freeh*, 275 F.3d 391, 405, n. 9 (4th Cir.2001)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

5

For the second step, a court must take the remaining factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. See *Twombly*, 550 U.S. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### IV. ARGUMENT

#### A. Defendant Parsons is Entitled to Absolute Judicial Immunity

It is well-settled that judges are absolutely immune from suit for damages arising out of acts performed in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). This immunity applies even where the judge's actions are alleged to be erroneous, malicious, or in excess of authority. *Id.* The Fourth Circuit has consistently applied this doctrine to state magistrates. *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987); *King v. Myers*, 973 F.2d 354, 356–57 (4th Cir. 1992). Judicial immunity is overcome only in two narrow circumstances: (1) where the act complained of is non-judicial in nature, or (2) where the act was taken in the clear absence of all jurisdiction. *Mireles*, 502 U.S. at 11–12. In determining whether an act is judicial, courts look not to the plaintiff's characterization of the conduct, but to "the nature of the function performed." *Forrester v. White*, 484 U.S. 219, 227–29 (1988). Acts that are "normally performed by a judge" and that occur in the context of a judicial proceeding are judicial acts, even if they are alleged to have been carried out improperly or in excess of statutory authority. *Stump*, 435 U.S. at 362.

Plaintiff relies heavily on *Gibson v. Goldston*, 44 F.4th 237 (4th Cir. 2022), but that decision

underscores why judicial immunity applies here. In *Gibson*, the Fourth Circuit held that a West Virginia family court judge was not entitled to judicial immunity because she personally participated in a warrantless search of a litigant's home and the seizure of its contents. *Id.* at 246–48. The court drew a critical distinction between issuing an order, which is a judicial act, and carrying out or executing an order, which is an executive function. *Id.* at 247. The judge in *Gibson* did not merely adjudicate a dispute or issue a directive; she physically accompanied parties to a private residence, directed entry, and supervised the search and seizure herself—conduct "quintessentially executive in nature." *Id.*

The Fourth Circuit expressly reaffirmed that issuing orders and adjudicating disputes remain core judicial functions protected by absolute immunity, and that immunity was denied in *Gibson* only because the judge stepped outside the judicial role and personally performed law-enforcement actions. *Id.* at 246–47. Here, by contrast, Plaintiff does not allege that Defendant Parsons personally executed a search, seized property, detained any individual, or carried out any law-enforcement function. All allegations concern Defendant Parsons' handling of a domestic violence petition—receiving it, considering information relevant to adjudication, and ultimately dismissing it. These are paradigmatic judicial acts. Even accepting Plaintiff's allegations as true, Defendant Parsons never crossed the line identified in *Gibson* between adjudication and execution. Thus, *Gibson* does not support Plaintiff's claims; it forecloses them.

This case is controlled by *King v. Myers*, 973 F.2d 354 (4th Cir. 1992), which provides a detailed and directly applicable analysis of judicial immunity in the face of allegations that a magistrate usurped executive or law-enforcement functions. In *King*, the plaintiff alleged that a Virginia magistrate improperly ordered her arrest without a warrant, thereby acting outside statutory authority and assuming the role of law enforcement. *Id.* at 356. The Fourth Circuit rejected that argument and held that the magistrate was entitled to absolute judicial immunity.

7

The Court framed the inquiry exactly as required here: whether the magistrate acted in the "clear absence of all jurisdiction" and whether the conduct was nonjudicial. *Id.* at 356–57. In doing so, the court emphasized the critical distinction between acts taken in excess of jurisdiction and acts taken in the clear absence of jurisdiction, explaining that when a judge exceeds authority, the relevant question is not whether the act was unauthorized, but whether the judge was "entirely devoid of power . . . ." *Id.* at 357.

Applying that framework, the Fourth Circuit held that, even if the magistrate exceeded her statutory authority, the conduct remained judicial because she performed a function "normally performed by a judge." *Id.* at 358 (quoting *Stump*, 435 U.S. at 362). The court expressly rejected the argument that a magistrate loses immunity merely because the challenged act resembles something a law-enforcement officer might do. *Id.* at 358–59. Most importantly for this case, the Fourth Circuit cautioned that accepting such an argument "would deprive a judge of immunity for any act that is in error or in excess of authority." *Id.* at 359 (citing *Mireles*, *supra*.).

Here, as in *King*, Plaintiff alleges that Defendant Parsons exceeded statutory authority, acted improperly, and undertook actions she characterizes as investigative. Even if accepted as true, such allegations describe, at most, acts taken in excess of authority, not acts taken in the clear absence of jurisdiction. The West Virginia Legislature has specifically given jurisdiction over domestic violence proceedings to magistrate courts concurrently with circuit courts and family courts. W. Va. Code § 48-27-301. Here, Defendant Parsons was acting as a magistrate judge in connection with a domestic violence petition, a subject matter squarely within the jurisdiction of West Virginia magistrate courts.

Plaintiff's theory rests on re-labeling judicial decision-making as "executive" conduct. But the Fourth Circuit has repeatedly rejected such semantic reframing. Courts look to the function performed, not the label attached. *Forrester*, 484 U.S. at 227. Issuing rulings, evaluating petitions, considering information relevant to adjudication, and dismissing matters for procedural reasons are

8

functions "normally performed by a judge." *Stump*, 435 U.S. at 362. Even if a judge's approach is unorthodox, procedurally flawed, or erroneous, those allegations do not transform judicial acts into executive ones. *King*, 973 F.2d at 358–59.

Because all conduct alleged in the Complaint concerns Defendant Parsons' handling and disposition of a judicial petition—and not the execution of law-enforcement activity—absolute judicial immunity applies. Judicial immunity is immunity from suit, not merely a defense to liability, and it should be resolved at the earliest possible stage. *Mireles*, 502 U.S. at 11; *Pressly*, 831 F.2d at 517. Accepting all well-pleaded facts as true, the Complaint alleges only judicial acts taken within jurisdiction. Accordingly, all claims against Defendant Parsons must be dismissed pursuant to Rule 12(b)(6).

### B. Defendant Parsons' Dismissal of the Petition was Procedurally Proper Because Venue Was Not Proper in Fayette County

Plaintiff's Complaint affirmatively alleges that the alleged domestic violence occurred in Raleigh County and that both she and the respondent resided there. By Plaintiff's own pleading, Raleigh County—not Fayette County—was the proper venue for her domestic violence petition. West Virginia law confirms this. Under W. Va. Code § 48-27-302, a domestic violence action may be heard only in the county where the violence occurred, where the respondent resides, or where the petitioner resides. Plaintiff alleges none of these statutory bases as to Fayette County. Accordingly, under the plain language of the statute, Fayette County was not a proper venue for the petition. The Complaint further alleges that it was the Raleigh County Magistrate Court that declined to act and redirected the petition to Fayette County. Under Plaintiff's own theory, any failure to proceed when venue was proper occurred, if at all, in Raleigh County, not in Fayette County.

When Plaintiff appeared before Defendant Parsons in Fayette County, the Complaint alleges that he dismissed the petition based on the impropriety of proceeding there. This allegation reflects a lack of venue, not a lack of jurisdiction. Jurisdiction concerns a court's power to act; venue concerns

9

where that power may properly be exercised. See *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*, 628 F. Supp. 2d 674, 684 (E.D. Va. 2009) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)). Defendant Parsons, as a magistrate judge, possessed subject-matter jurisdiction over domestic violence proceedings generally pursuant to W. Va. Code § 48-27-301, and he acted within that jurisdiction by determining that venue in Fayette County was improper pursuant to W. Va. Code § 48-27-302.

Plaintiff's claims therefore rest on an internal contradiction. She alleges that venue was proper in Raleigh County and improper in Fayette County yet seeks to impose liability on Defendant Parsons for declining to adjudicate a petition she herself alleges did not belong in his county. Notably, Plaintiff does not assert any constitutional claim against the Raleigh County magistrate—who, by her own allegations, had proper venue and declined to proceed—but instead targets the Fayette County magistrate for refusing to adjudicate a petition that Plaintiff herself alleges did not belong in Fayette County at all. The Constitution does not require a judicial officer to hear a case filed in an improper venue, nor does it impose liability for declining to do so.

Accordingly, even apart from absolute judicial immunity, Plaintiff's own allegations and the governing statute establish that Defendant Parsons acted within his jurisdiction and in accordance with West Virginia law by dismissing a matter for which venue was improper. Because Plaintiff's own allegations establish that Defendant Parsons acted lawfully and within his jurisdiction, the Complaint fails to state a plausible claim against him and must be dismissed under Rule 12(b)(6).

### C.     Plaintiff Fails to Plead a Viable Access-to-Courts Claim Under the First or Fourteenth Amendments

The Constitution guarantees access to courts, not a right to a favorable outcome. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Plaintiff attempts to recast a magistrate judge's adverse procedural ruling as a constitutional denial of access to the courts. That framing fails as a matter of law under both the Fourteenth Amendment's Due Process Clause and the First Amendment's Petition Clause.

    **i.**  **Fourteenth Amendment**

  The Fourteenth Amendment's Due Process Clause protects against state action that denies a litigant the opportunity to be heard through established adjudicatory procedures. As the Supreme Court has explained, due process is violated where the State's actions are "the equivalent of denying [a litigant] an opportunity to be heard upon [her] claimed rights." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–30 (1982) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971)). Likewise, "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Logan*, 455 U.S. at 434.

  That is not what Plaintiff alleges here. Plaintiff does not allege that she was prevented from filing a petition, barred from court, silenced, or denied a hearing altogether. To the contrary, the Complaint alleges that Plaintiff filed a petition, appeared before a magistrate judge, and received a ruling—albeit an unfavorable one. A judicial determination that a petition cannot proceed in a particular forum is not a denial of access; it is an adjudication on a procedural issue. Axiomatically, there can be no denial of access to courts where the litigant was heard and the claim adjudicated. That is not a due-process denial of access—it is a merits or procedural determination, which is addressed through appeal or refiling in the proper forum, not through § 1983. Such adjudicative acts are further protected by absolute judicial immunity.

  Plaintiff therefore fails to allege the type of state action condemned in *Logan* or *Boddie*. Her allegations amount to dissatisfaction with the outcome of judicial proceedings, not deprivation of the opportunity to be heard.

    **ii.**  **First Amendment**

  To the extent Plaintiff invokes the First Amendment, her claim fares no better. A valid First Amendment retaliation claim requires allegations that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took action that adversely affected that activity; and (3) a causal

11

relationship exists between the protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("Martin II"); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

The plaintiff must plausibly allege that the defendant's conduct was substantially motivated by the plaintiff's exercise of protected rights and that it impaired the exercise of those rights. *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). Where retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights," a claim may proceed. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

Plaintiff pleads none of these elements. She does not allege facts showing that Defendant Parsons acted because she filed a petition, that his actions were motivated by animus toward protected activity, or that his ruling deterred her from exercising her right to petition. Allegations of adverse action following protected conduct, without more, are insufficient. "'Retaliation is not established simply by showing adverse activity by [a] defendant after protected speech; Plaintiff must show a nexus between the two.'" *Williams v. Fox*, No. 1:16-cv-00143, 2017 WL 916432, at *7 (D. Idaho Mar. 7, 2017).

Courts in this District have likewise held that a plaintiff must allege more than speculative belief that she was the victim of retaliation. See *Williams v. Marshall*, 2025 U.S. Dist. LEXIS 47583, at *16 (S.D.W. Va. Feb. 20, 2025). Plaintiff's conclusory assertions of improper motive and retaliation, unsupported by factual allegations establishing causation, do not satisfy the pleading standard under *Twombly* and *Iqbal*.

An adverse judicial ruling (even one a plaintiff believes to be erroneous or unfair) does not amount to a constitutional denial of access. Plaintiff's access to courts claim therefore fails under both the First and Fourteenth Amendments and must be dismissed under Rule 12(b)(6).

### D. Plaintiff Fails to Plead an Equal Protection Violation

Plaintiff's Equal Protection claim rests on the assertion that Defendant Parsons treated her differently from other domestic violence petitioners. That allegation fails as a matter of law because Plaintiff does not plausibly allege (1) differential treatment of similarly situated individuals, (2) intentional or purposeful discrimination, or (3) conduct subject to Equal Protection scrutiny in the first instance.

#### i. Plaintiff Fails To Plead Differential Treatment and Discriminatory Intent

The Equal Protection Clause protects against intentional and arbitrary discrimination. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a viable claim, a plaintiff must plausibly allege not only that similarly situated individuals were treated differently, but also that the differential treatment was the result of intentional or purposeful discrimination. *Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 635 (4th Cir. 2016); *Domestic Violence Survivors Support Grp., Inc. v. Crouch*, 2020 U.S. Dist. LEXIS 193319, at *28 (S.D.W. Va. Oct. 19, 2020).

Where a plaintiff alleges discriminatory administration of a facially neutral law, "more must be [alleged] than the fact that a benefit was denied to one person while conferred on another." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 (4th Cir. 1995) (emphasis in original). A violation is established only if the plaintiff plausibly alleges that the state official intended to discriminate. *Id.*; *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). Conclusory assertions of improper motive are insufficient. *Pronin v. Johnson*, 628 F. App'x 160, 164 (4th Cir. 2015).

Here, Plaintiff identifies no similarly situated petitioners, pleads no facts showing disparate treatment, and alleges no nonconclusory facts supporting discriminatory intent. Her Equal Protection claim therefore fails at the threshold.

### ii. "Class-of-One" Equal Protection Does Not Apply to Discretionary Magistrate Adjudication of Domestic Violence Petitions

Even if Plaintiff proceeds under a class-of-one theory, her Equal Protection claim fails as a matter of law. Class-of-one claims do not apply to discretionary, individualized governmental decision-making. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603–04 (2008). Magistrate adjudication of domestic violence petitions necessarily involves case-specific judgments based on venue, statutory criteria, and procedural posture, and differing outcomes are an inherent feature of that discretion. Plaintiff identifies no similarly situated petitioner who was treated differently, nor pleads any facts suggesting intentional discrimination. Her Equal Protection claim therefore collapses at the threshold.

The Supreme Court illustrated this principle in *Engquist* with the example of a traffic officer who tickets one speeder but not others. Even if no articulable reason exists for selecting that particular driver, such discretionary enforcement does not implicate Equal Protection absent allegations of discrimination based on a protected characteristic. *Id.* at 603–04. As the Court explained, "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.* at 604.

That reasoning applies with equal, or greater, force to judicial decision-making. Acting as a magistrate necessarily involves discretionary, case-by-case judgments based on individualized assessments of credibility, statutory criteria, procedural posture, and venue. Magistrates are not tasked with rubber-stamping every domestic violence petition that crosses their desks; rather, West Virginia law requires them to evaluate each petition on its own facts and procedural footing. Different outcomes in different cases are not only expected—they are inherent in the judicial function.

Plaintiff's Equal Protection claim thus seeks to constitutionalize ordinary judicial discretion. She identifies no similarly situated domestic violence petitioner—let alone one presenting the same factual allegations, venue defects, and procedural posture—who was treated differently by Defendant

Parsons. Instead, she relies on generalized assertions that "other petitioners" received different treatment. Where the challenged conduct is discretionary and individualized, as magistrate adjudication plainly is, the failure to plead specific, well-situated comparators is fatal to any class-of-one claim. *Engquist*, 553 U.S. at 603–04; *Domestic Violence Survivors Support Grp., Inc. v. Crouch*, 2020 U.S. Dist. LEXIS 193319, at *28–29 (S.D.W. Va. Oct. 19, 2020).

At bottom, Plaintiff's Equal Protection claim is an attempt to constitutionalize an adverse judicial outcome. The Equal Protection Clause does not guarantee identical outcomes in discretionary adjudication, nor does it prohibit judges from reaching different conclusions in different cases. Absent well-pleaded facts showing intentional discrimination, particularly discrimination based on a protected characteristic, Plaintiff's Equal Protection claim fails as a matter of law. Accordingly, Plaintiff's Equal Protection claim fails as a matter of law and must be dismissed under Rule 12(b)(6).

### E. Plaintiff Fails to Plead a Substantive Due Process Violation

Plaintiff's substantive due process claim again attempts to constitutionalize a magistrate judge's handling of a domestic violence petition. That effort fails as a matter of settled law. Substantive due process is a "narrow" doctrine that does not convert ordinary governmental or judicial decisions into constitutional torts. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 750 (2005); *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). To state such a claim, Plaintiff must plausibly allege either interference with a fundamental right deeply rooted in the Nation's history and tradition or conduct so egregious that it "shocks the conscience." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). She alleges neither.

The Supreme Court has squarely rejected the premise underlying Plaintiff's claim—that the Constitution guarantees protection from private violence. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). That principle forecloses attempts to impose constitutional liability based on the denial of a domestic violence protective order. Although decided in the procedural due process

context, *Castle Rock* confirms that there is no constitutional entitlement to enforcement of such orders, even where state law appears mandatory. 545 U.S. at 760–61. If there is no constitutional right to enforcement, there is necessarily no fundamental substantive due process right to issuance of a protective order in the first instance.

Consistent with this precedent, the Southern District of West Virginia recently reaffirmed that alleged failures to act or to protect against private violence "present no cognizable constitutional claim." *Harper v. Zerkle*, 2024 U.S. Dist. LEXIS 247313, at *16–17 (S.D.W. Va. Aug. 13, 2024). That reasoning applies with even greater force here, where Plaintiff challenges a judicial decision declining to grant relief.

Nor does Plaintiff allege conduct that "shocks the conscience." That demanding standard is directed at egregious executive misconduct, not judicial decision-making. *Lewis*, 523 U.S. at 846–47. Alleged legal error or dissatisfaction with a magistrate's ruling sounds in appeal, not substantive due process. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). Because Plaintiff alleges no fundamental right, no conscience-shocking conduct, and no constitutional entitlement to issuance of a domestic violence protective order, her substantive due process claim is foreclosed by binding precedent and must be dismissed under Rule 12(b)(6).

### F. Plaintiff's West Virginia Constitutional Claims Fail Because Monetary Damages Are Not Available as a Matter of Law

Plaintiff's Complaint asserts parallel claims under the United States Constitution and multiple provisions of the West Virginia Constitution—Article III, Sections 6, 10, and 17—yet seeks only monetary damages, with no request for declaratory or injunctive relief. (See Plaintiff's Complaint, ¶¶ 87-88 and Section IX). Unlike federal constitutional claims brought under 42 U.S.C. § 1983, West Virginia does not recognize a general private cause of action for money damages based on alleged violations of its Constitution**.** The Supreme Court of Appeals of West Virginia has squarely held that, absent an express or implied damages remedy within the constitutional provision itself, state

constitutional claims are not independently actionable for monetary relief. *Fields v. Mellinger*, 244 W. Va. 126, 851 S.E.2d 789, 795–99 (2020). Federal courts within the Fourth Circuit have consistently applied *Fields* to dismiss state constitutional claims seeking damages, including claims asserted alongside § 1983 causes of action. See *McMillion-Tolliver v. Kowalski*, No. 2:13-cv-29533, 2014 U.S. Dist. LEXIS 44365, at *2–3 (S.D. W. Va. Apr. 1, 2014); *Smoot v. Green*, No. 2:13-10148, 2013 U.S. Dist. LEXIS 156887, at *5 (S.D. W. Va. Nov. 1, 2013). These decisions recognize that West Virginia has no statutory analogue to § 1983, and courts may not create one by judicial fiat.

That rule applies with particular force here. Plaintiff's West Virginia constitutional allegations merely mirror her federal theories—equal protection, due process, access to courts, and conspiracy—and are pleaded as nothing more than state-law analogues to federal constitutional claims. Where, as here, a plaintiff seeks damages for alleged constitutional violations arising from discretionary governmental or judicial conduct, the exclusive vehicle for monetary relief is § 1983, not the West Virginia Constitution. *Fields*, 851 S.E.2d at 798–99.

Nor can Plaintiff salvage her claims by invoking Article III, Section 10 (due process) or Section 17 (access to courts). Those provisions are West Virginia's counterparts to federal constitutional guarantees and do not independently authorize damages actions. Federal courts applying Fourth Circuit precedent have dismissed such claims where the plaintiff seeks damages rather than equitable relief. See *Murray v. Matheney*, No. 2:13-CV-15798, 2017 U.S. Dist. LEXIS 177670, at *8–9 (S.D. W. Va. Oct. 26, 2017). Because Plaintiff seeks only money damages under the West Virginia Constitution—and because no such remedy exists as a matter of law—her state constitutional claims fail at the threshold and must be dismissed with prejudice.

Plaintiff's claim for intentional infliction of emotional distress also fails as a matter of law. The claim is entirely derivative of Plaintiff's barred constitutional theories and is based solely on Defendant Parsons' judicial handling of a domestic violence petition. Such conduct (which is also protected by

absolute judicial immunity) cannot, as a matter of law, satisfy West Virginia's demanding "extreme and outrageous" standard for intentional infliction of emotional distress. *Travis v. Alcon Labs., Inc.*, 202 W. Va. 369, 375 (1998). Count VI should therefore be dismissed with prejudice.

## IV. CONCLUSION

Plaintiff's Complaint attempts to convert dissatisfaction with a magistrate judge's adjudication of a domestic violence petition into a federal civil rights case. Binding Supreme Court and Fourth Circuit precedent foreclose that effort. Defendant Parsons is entitled to absolute judicial immunity because all conduct alleged in the Complaint consists of core judicial acts performed within his jurisdiction: receiving, evaluating, and dismissing a petition. Plaintiff's attempt to recharacterize adjudication as "executive" conduct is squarely contradicted by *Stump*, *Mireles*, *King v. Myers*, and *Gibson v. Goldston*, which draw a clear line between judicial decision-making and the personal execution of law-enforcement actions. Plaintiff alleges only the former.

Independently, Plaintiff's own allegations and West Virginia law establish that venue was improper in Fayette County. Under W. Va. Code § 48-27-302, Raleigh County, not Fayette County, was the proper forum. Defendant Parsons acted well within his jurisdiction by declining to adjudicate a petition filed in an improper venue. Plaintiff's attempt to impose liability on a magistrate for refusing to proceed where venue was lacking is both legally and logically untenable.

Plaintiff's constitutional claims fail as a matter of law. She was not denied access to the courts; she filed a petition, appeared before a magistrate, and received a ruling. Adverse judicial outcomes do not constitute denial of access under the First or Fourteenth Amendments. Her Equal Protection claim collapses under *Engquist*, which forecloses class-of-one theories in inherently discretionary, individualized decision-making contexts such as judicial adjudication, particularly where, as here, Plaintiff pleads no comparators and no nonconclusory facts showing intentional discrimination. Her substantive due process claim fares no better. There is no constitutional right to protection from

private violence, no fundamental right to issuance of a domestic violence protective order, and no precedent recognizing an substantive due process claim based on a judge's denial of such relief. *DeShaney*, *Castle Rock*, *Snowden*, and *Harper v. Zerkle* are dispositive. Plaintiff's state constitutional claims also fail outright, as West Virginia law provides no vehicle for recovering money damages for alleged violations of Article III, and Plaintiff's prayer for relief confirms that she seeks nothing else.

In its simplest form, the Complaint asks this Court to constitutionalize ordinary judicial discretion and procedural rulings. The Constitution does not do so, and § 1983 is not a substitute for appellate review. For all of these reasons, Defendant Parsons respectfully requests that the Court dismiss the Complaint in its entirety with prejudice pursuant to Rule 12(b)(6).

**WHEREFORE,** Defendant Parsons respectfully requests that the Court grant his Motion to Dismiss Plaintiff's Complaint, dismiss Plaintiff's Complaint in its entirety with prejudice, and for such other relief this Court deems just and proper.

**SAMUEL D. PARSONS,**

**By Counsel,**

 /s/ **Andrew R. Herrick**
Charles R. Bailey (WV Bar #0202)
Andrew R. Herrick Esq. (WV Bar #12269)
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
(304) 345-4222
(304) 343-3133 (fax)
cbailey@baileywyant.com
aherrick@baileywyant.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

**JANE DOE, a known person proceeding
under pseudonym,**

    **Plaintiff,**

v.                                                                                       **Civil Action No. 5:25-cv-00759**

**SAMUEL D. PARSONS, in his individual
capacity, acting under color of state law as
a Fayette County Magistrate, MX.DOE(S),
individuals sued in their individual
capacity, whose identity is presently
unknown, gender neutral,**

    **Defendants,**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing "**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PARSONS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**" was electronically filed with the Clerk of the Court using the Court's Electronic Case Filing (CM/ECF) system, which will send notification of such filing to the following on this day, December 30, 2025:

Timothy P. Lupardus Esq.
Lupardus Law Office
P.O. Box 1680
275 Bearhole Road
Pineville, WV 24874
tim@luparduslaw.com
*Counsel for: Jane Doe*

                                              **/s/ Andrew R. Herrick**
                                              Charles R. Bailey (WV Bar #0202)
                                              Andrew R. Herrick Esq. (WV Bar #12269)
                                              Bailey & Wyant, PLLC
                                              500 Virginia Street, East, Suite 600
                                              Post Office Box 3710
                                              Charleston, West Virginia 25337-3710
                                              (304) 345-4222
                                              (304) 343-3133 (fax)
                                              cbailey@baileywyant.com
                                              aherrick@baileywyant.com