**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

JANE DOE,
*a known person proceeding under pseudonym*,

Plaintiff,

v. CIVIL ACTION NO. 5:25-cv-00759

SAMUEL D. PARSONS,
*in his individual capacity, acting under color of state law as a Fayette County Magistrate*, and
MX. DOE(S),
*individuals sued in their individual capacity, whose identity is presently unknown, gender neutral*,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Samuel D. Parsons' Motion to Dismiss [ECF 3], filed December 30, 2025. Plaintiff Jane Doe responded in opposition [ECF 6] on February 23, 2026,[1] to which Defendant replied [ECF 7] on March 2, 2026. This matter is ready for adjudication.

**I.**

On July 26, 2024, Ms. Doe attempted to file an emergency petition for entry of a domestic violence protective order ("DVP") against the Raleigh County Prosecuting Attorney ("RCPA") with the Raleigh County Magistrate. [ECF 1–2 ¶¶ 59, 61]. The petition alleged the RCPA had sexually assaulted Ms. Doe. [*Id.* ¶ 59]. According to the petition, the conduct occurred

[1] Ms. Doe's Response explains counsel for Ms. Doe was out of the office due to a death in the family at the time the Motion to Dismiss was filed, and the response deadline was not properly calendared. Despite asserting the Response would be accompanied by a Motion to Accept Out of Time, no such motion was filed. Nonetheless, for good cause shown, the Court accepts Ms. Doe's Response out of time.

in Raleigh County, where both Ms. Doe and the RCPA resided. [*Id.* ¶ 61]. Following a series of phone calls, the Raleigh County Magistrate told Ms. Doe she instead had to file her petition in the Fayette County Magistrate Court. [*Id*. ¶ 60].

Ms. Doe subsequently brought her petition before Magistrate Parsons in the Fayette County Magistrate Court. [*Id.* ¶¶ 62–63]. While determining the outcome of the petition, Magistrate Parsons left Ms. Doe alone and went to his office multiple times to make phone calls -- which Ms. Doe could partially hear -- regarding Ms. Doe's petition. [*Id.* ¶ 19]. "At one point, [Magistrate Parsons] returned to the courtroom and required [Ms. Doe] to provide the names and phone numbers of an FBI agent, United States Attorney, and a witness/victim coordinator" with whom she had communicated in confidence concerning investigation of the sexual assault incident. [*Id*. ¶¶ 48, 63].

The "more than hour long phone campaign" involved Mr. Parsons communicating with individuals Ms. Doe believed were "mostly Raleigh County associates of the prosecutor" and possibly the RCPA against whom Ms. Doe sought her protective order. [*Id.* ¶¶ 59, 63, 66]. Ms. Doe contends Magistrate Parsons spoke to, among others, apparent witnesses and some of the Mx. Doe defendants. [*Id.* ¶ 19]. Magistrate Parsons then "reappeared and denied the petition" -- a decision which was later overturned on appeal. [*Id*. ¶ 64]. Ms. Doe asserts the Mx. Doe defendants include certain "Raleigh County Commissioners, employees of the Raleigh County Magistrate Court and Clerk's Office(s), employee(s) of the Fayette Magistrate Court, and others supporting the [Raleigh County] prosecutor" who communicated with or assisted Magistrate Parsons during his investigative conduct. [*Id*. ¶¶ 66, 68].

Ms. Doe instituted this action in the Circuit Court of Raleigh County on October 31, 2025. [ECF 1–1]. She asserts four claims against Magistrate Parsons individually, (1) pursuant

to 42 U.S.C. § 1983 for violations of her Fourteenth Amendment rights to equal protection and due process, (2) for violations of the West Virginia Constitution, Article III, Sections 10 and 17, and (3) for intentional infliction of emotional distress. [ECF 1–2]. She also asserts a conspiracy claim against Magistrate Parsons and the Mx. Doe Defendants regarding the above constitutional violations, along with a violation of Article III, Section 6 of the West Virginia Constitution. [*Id.*]

Magistrate Parsons removed on December 23, 2025, inasmuch as some of Ms. Doe's claims arise under the Constitution and laws of the United States. [ECF 1]. Magistrate Parsons now contends Ms. Doe has failed to state a claim upon which relief can be granted and asserts judicial immunity as an absolute defense to all of Ms. Doe's claims. [ECF 3]. Ms. Doe opposes dismissal inasmuch as her claims are not barred by judicial immunity, and because Magistrate Parson's conduct plausibly violated her constitutional rights and constituted intentional infliction of emotional distress. [ECF 6 at 8].

**II.**

***A. Governing Standard***

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing … entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 92 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fails to plausibly state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The required "short and plain" statement must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than

labels and conclusions." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratono v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. North Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation modified). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555); *S.C. Dep't of Health & Env. Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### ***B. Judicial Immunity***

"Judicial immunity is strong medicine. When it applies it is absolute. It not only protects judges from ultimate liability in a case but also serves as a complete bar to suit." *Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023). "As judicial officers, magistrates are entitled to

absolute immunity for acts performed within their judicial capacity." *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987). It is well established that this "immunity is overcome in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). "[J]udges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter' or when they engage in nonjudicial acts." *Gibson*, 85 F.4th at 223 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1872)); *see also Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Forrester v. White*, 484 U.S. 219, 227–29 (1988); *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992).

**III.**

***A. Jurisdiction***

"[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356. "A distinction is drawn between acts that are performed in 'excess of jurisdiction' and those performed in the 'clear absence of all jurisdiction over the subject-matter,' with the former type of act accorded immunity." *King*, 973 F.2d at 356–57; *Stump*, 435 U.S. at 356 n.6 (quoting *Bradley* 80 U.S. at 351). Although a judge who "undertakes to act in an area where he has no subject matter jurisdiction [is denied absolute immunity], . . . it is immaterial that his challenged judicial act may have been unauthorized by the laws which govern his conduct." *King*, 973 F.2d at 357. Pursuant to *West Virginia Code* § 48-27-301 "[c]ircuit courts, family courts and magistrate courts have concurrent jurisdiction over domestic violence proceedings." W. Va. Code § 48-27-301. "The action may be heard in the county in which the domestic violence occurred, in the county in which the respondent is living or in the county in which the petitioner is living, either temporarily or permanently." W. Va. Code § 48-27-302.

Magistrate Parsons contends denial of Ms. Doe's petition was appropriate because

venue was improper in the Fayette County Magistrate Court. [ECF 4 at 9]. Ms. Doe, however, contends Magistrate Parsons' denial of her petition was unrelated to venue—and instead that Magistrate Parsons denied Ms. Doe's petition on the merits without having the authority to do so. [ECF 6 at 3]. In fact, Magistrate Parsons' denial order included a checked off box confirming venue was proper as to the petition. [ECF 6–1]. Additionally, following Ms. Doe's appeal, the family court concluded venue was improper in Fayette County. [ECF 6 at 11].

The Court is unpersuaded Magistrate Parsons denied the petition for improper venue. However, the improper exercise of venue does not equate to a "clear absence of all jurisdiction over the subject-matter." *Gibson*, 85 F.4th at 223; *See, e.g., Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 965 (6th Cir. 2021) (concluding a judge's *ex parte* order was not in clear excess of all jurisdiction despite having improperly exercised venue over the proceedings.). Instead, Magistrate Parsons' improper assertion of venue amounts to procedural error. Inasmuch as Magistrate Parsons was vested with subject matter jurisdiction over Ms. Doe's petition pursuant to *West Virginia Code* § 48-27-301, the Court concludes he did not act in the clear absence of all jurisdiction.

***B. Judicial Acts***

"The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.*, whether they dealt with a judge in his judicial capacity." *Stump*, 435 U.S. at 362; *see also King*, 973 F.2d at 356–57. Specifically, courts must examine "the nature of the function performed, not the identity of the actor who performed it." *Forrester*, 484 U.S. at 229. Thus, it is not the "particular act in question" that is scrutinized, for otherwise "any mistake of a judge in excess of his authority would become a 'nonjudicial' act[] because an improper or

erroneous act cannot be said to be normally performed by a judge." *Mireles*, 502 U.S. at 12–13; *see also Stump,* 435 U.S. at 352–53.

Instead, it is the "particular act's relation to a general function normally performed by a judge" that is subject to scrutiny. *Mireles*, 502 U.S. at 13. "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359. This broad immunity reaches even to acts "alleged to have been done maliciously or corruptly." *Id.* at 356 (quoting *Bradley*, 80 U.S. at 351). However, judges and magistrates alike are subject to § 1983 liability when their conduct "clearly exceed[s] the most common understandings of the proper judicial role." *Gibson*, 85 F.4th at 222–23.

For example, a judge is not entitled to judicial immunity if he engages in conduct reserved for the executive branch, such as "investigative efforts that are part and parcel of the law enforcement function." *Id.* at 224 (denying judicial immunity where a judge participated in a warrantless search and seizure of a home because the judge was acting as an "adjunct law enforcement officer."). Further, judicial immunity does not extend to a judge's administrative decisions. *Forrester*, 484 U.S. at 228 (declining to extend judicial immunity to judges' hiring and firing of court employees).

Judicial immunity, however, extends to judicial acts even if a judge "was not in his judge's robes, he was not in the courtroom itself, and he may well have violated state and/or federal procedural requirements. . . ." *Stump*, 435 U.S. at 361 (quoting *McAlester v. Brown*, 469 F.2d 1280, 1282 (1972)). Nor does a "lack of formality" eliminate the broad cloak of judicial immunity. *Id.* (Extending immunity to a judge's approval of a mother's petition to have a tubal ligation performed on her minor daughter without the daughter's knowledge or consent). Additionally, an act may be considered judicial even when it is not normally performed by a judge. *King*, 973 F.2d at 358

(granting immunity to a magistrate who ordered a warrantless arrest because magistrates have authority to issue process of arrest in Virginia). Thus, the Court must decide here whether Magistrate Parsons' seeming investigation of facts relating to Ms. Doe's petition -- through direct communication with witnesses and potential parties to the petition -- constitutes a judicial act. [ECF 1–2 at ¶ 49].

Ms. Doe contends Magistrate Parsons engaged in investigative conduct by asking her to provide the names of individuals with whom she communicated about the alleged sexual assault leading to her application for a domestic violence petition. [ECF 1–2 ¶¶ 19–20, 66–69, 71]. Further, she alleges Magistrate Parsons exchanged phone calls, emails, texts, and faxes with certain individuals associated with the RCPA, specifically seeking information related to her petition. [ECF 1–2 ¶¶ 68–69]. Notably, although certainly not here determinative, the *West Virginia Code of Judicial Conduct* states a judge "shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly judicially noticed." *See Canon 2, Rule 2.9(c)*. For this and other reasons, Ms. Doe alleges Magistrate Parsons exceeded his judicial role. [ECF 1–2 ¶ 20].

In considering the "expectation[s] of the parties," *Stump*, 435 U.S. at 362, "[i]t is not unreasonable that all persons involved in a dispute requiring judicial resolution would expect that the judge resolving that dispute would conform to standards of judicial conduct." *Roush v. Hey,* 197 W. Va. 207 (1996). Of course, violations of the *West Virginia Code of Judicial Conduct* are not dispositive in a § 1983 judicial immunity determination. *See, e.g., Ward v. Plymale*, 2013 WL 6164277, at *14 (S.D.W. Va. Nov. 25, 2013); *see also Cooper v. Parrish,* 203 F.3d 937, 946 (6th Cir. 2000) (concluding that, although the judge's "participation in ex parte communications . . . may have been improper under Tennessee law," specifically its judicial canons, "these

communications were nonetheless related to his general judicial functions[.]"). Frankly, Magistrate Parsons' violation of Canon 2, Rule 2.9(c) related to his general judicial functions, which includes his authority to consider and rule on petitions for domestic violence protection orders pursuant to *West Virginia Code* § 48-27-301. *See, e.g., Cooper*, 203 F.3d at 946. And a judge does not lose immunity merely because an action resembles something a law enforcement officer might also do. The relevant question remains whether the particular conduct, considered in context, was undertaken as part of a function normally performed by a judge. *Mireles*, 502 U.S. at 12–13; *see also Stump,* 435 U.S. at 352–53.

And that is where the difficulty arises. The record does not permit the Court to answer the extant question. The parties' competing characterizations of Magistrate Parsons' conduct underscore the problem. Magistrate Parsons explains his conduct as nothing more than receiving and handling a domestic-violence petition, considering information relevant to adjudication, and ultimately dismissing the matter. [ECF 4 at 1, 8–9]. If that is what occurred, the conduct would fall comfortably within the judicial function. Issuing rulings, evaluating petitions, considering evidence or information relevant to adjudication, and disposing of matters before the court are paradigmatic judicial acts. *Mireles*, 502 U.S. at 12–13; *see also Stump,* 435 U.S. at 352–53.

Ms. Doe, however, alleges a materially different course of events. She asserts Magistrate Parsons did not merely consider evidence presented to him in a judicial proceeding, but instead left the courtroom, initiated communications with individuals outside the proceeding, sought information from third parties, and independently investigated the factual allegations underlying her petition. [ECF 1–2 ¶¶ 19–20, 66–69, 71]. Ms. Doe further disputes Magistrate Parsons' assertion that she was afforded a hearing, alleging that no hearing occurred at all. [ECF 6

at 4]. Ms. Doe's version of events -- along with all accompanying, reasonable inferences adopted in her favor -- suggests Magistrate Parsons not only embarked upon an investigation guided by the RCPA and his agents but also acted as an information-gathering agent by that same target of the requested DVP respecting federal investigative efforts attached to the victimization of which she complained.

Moreover, the Court is unable to determine at this juncture whether Magistrate Parsons' conduct was judicial in nature merely because it occurred in connection with a petition that he had authority to adjudicate. The allegations here, if proven, could support either characterization. If Magistrate Parsons' telephone calls consisted merely of obtaining information necessary to understand or adjudicate the petition, or if they were part of a judicial hearing or other adjudicative process, then the challenged conduct may well constitute judicial acts protected by absolute immunity. *See, e.g., Cooper*, 203 F.3d at 946. Likewise, if Magistrate Parsons simply considered information relevant to the petition and then ruled upon it, his procedures being unusual or even erroneous would not defeat immunity. *Id.*

If, however, Magistrate Parsons independently undertook to investigate the allegations, locate or interview witnesses, gather evidence, contact law-enforcement or prosecutorial authorities, otherwise develop a factual record outside the judicial process, or even something more malevolent and far beyond the judicial function, a different question would be presented. Under *Forrester* and *Gibson*, a judicial officer is not insulated from liability merely because he engages in such conduct while occupying judicial office. *See Forrester*, 484 U.S. at 228; *Gibson*, 85 F.4th at 224.

The present record is insufficient to resolve the questions. Discovery may establish, for example, the identities of the persons Magistrate Parsons contacted, the purpose of each

communication, the information Magistrate Parsons sought or obtained, whether Magistrate Parsons was attempting to corroborate or investigate allegations independently, whether communications were undertaken as part of a hearing or other judicial proceeding, and whether any evidence obtained through those communications was considered in deciding Ms. Doe's petition. Those facts bear directly upon the nature of the function Magistrate Parsons performed and therefore upon whether his conduct was judicial for purposes of absolute immunity. The Court is thus unable at this early stage to resolve the immunity defense.

**IV.**

Based on the foregoing discussion, Magistrate Parsons' Motion to Dismiss **[ECF 3]** is **DENIED WITHOUT PREJUDICE**.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: September 11, 2026

Frank W. Volk
Chief United States District Judge